IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> MARCOS MENDEZ, <br><br> Defendant. | Case No. 16-cr-00163-1 <br><br> Judge Mary M. Rowland |

**MEMORANDUM OPINION AND ORDER**

On April 26, 2016, Defendant Marcos Mendez was indicted on four counts, two counts of production of child pornography, in violation of 18 U.S.C. § 2251(a); one count of transportation of child pornography, in violation of § 2252A(a)(1); and one count of possession of child pornography, in violation of §2252A(a)(5). Mendez has moved to suppress the evidence obtained by the Government in this case, arguing that the Government violated his Fourth Amendment rights by searching his cell phone without first obtaining a search warrant. For the following reasons, Mendez's motion to suppress [50] is denied.

**I. Background**

The facts herein are undisputed and drawn from the evidentiary hearing and the parties' briefs. On February 20, 2016, Marcos Mendez ("Mendez" or "Defendant") arrived alone at Chicago O'Hare International Airport from Ecuador via Panama

1

City, Panama. (Gov't Resp. (Dkt. 54), p. 2). Based on a TECS entry[1] for Mendez, he was selected for secondary inspection. *Id*. During the secondary inspection, two U.S. Customs and Border Protection (CBP) Officers conducted routine questioning of Mendez. *Id*. Officers then searched Mendez's possessions and located three electronic devices—a personal cell phone, a work cell phone, and a work iPad. *Id*. at 3. The officers first manually searched Mendez's personal cell phone, his work cell phone, and his work iPad. *Id*. CBP Officer Richard Callison conducted a manual search of Mendez's personal cell phone. *Id*. at 4. Having found child pornography within about 30 minutes of when the secondary inspection began, Officer Callison consulted his supervisor and obtained approval to DOMEX Mendez's devices. *Id*. at 5. DOMEX technology downloads a copy of the device's contents based on certain search parameters but does not damage or change the data on the device or disrupt the function of the device. *Id*. The DOMEX extracted files only from the camera roll of Mendez's cell phone.

CBP gave the extracted data from the cell phone to DHS's Homeland Security Investigations ("HSI") (when CBP finds child pornography it calls on HSI to do the investigation). Relying in part on evidence from the manual search and forensic preview of Mendez's phone, the Government later obtained search warrants for Mendez's residence, his parents' residence, his Apple iCloud account, and his work electronics. (Dkt. 54 at 7). Border crossing information showed that on February 23,

---

[1] Formerly known as the Treasury Enforcement Communications System, TECS is used by the U.S. Department of Homeland Security (DHS) to manage the flow of people through border ports of entry and for immigration enforcement case management. *Id*.

2016, two days after Mendez was released from O'Hare, his mother drove him across the border into Mexico in the family's car. *Id.* at 8. Mendez was indicted on April 26, 2016 and was extradited to the United States from Mexico on January 22, 2020. *Id.*

The Court held an evidentiary hearing on the motion to suppress on May 28, 2021. (*see* Dkt. 73).[2] At the hearing, the Government presented testimony from CBP Officer Callison, who was assigned to the Customs' Passenger Enforcement Rover Team at O'Hare. Defendant presented testimony from HSI Special Agent Jennifer Finerty. In 2016 Agent Finerty was assigned to the HSI O'Hare Group. She obtained an initial search warrant on March 10, 2016 to search Mendez's and his parents' residence. She obtained a second search warrant for Mendez's three devices on March 18, 2016, and a third warrant on March 24, 2016 for all information related to Mendez's Apple ID. Defendant also presented CBP Officer Mohammed M. Alikhan, who was on the same team as Officer Callison in 2016. The Government also relied on six exhibits at the hearing.[3] The Court found all of the witnesses to be credible, in particular Officer Callison who provided the most testimony.

---

[2] Defendant requested an evidentiary hearing. (*see* Dkts. 59, 67). After review of the parties' briefs and consideration of the issues in dispute, the Court granted Defendant's request for an evidentiary hearing. *See United States v. Villegas*, 388 F.3d 317, 324 (7th Cir. 2004) (evidentiary hearing warranted if there are disputed issues of material fact).

[3] The Court admitted five of the Government's exhibits: Government Exhibits 1A through 1D: photos of how the secondary inspection area appeared on February 20, 2016 (although they were not photos of the exact area since that particular area is being remodeled). Government Exhibit 2: Mendez's personal iPhone. Government Exhibit 3: Customs and Border Protection tear-sheet explaining the airport search process. Government Exhibits 4A through D: red folder containing photographs of images Officer Callison saw during his manual search, in the cell phone's photo gallery. Government Exhibits 5A through D: CDs containing the photos and videos extracted from the cell phone using the DOMEX technology. Defendant stipulated to Government Exhibit 6, the NCIC (National Crime Information Center) report for Mr. Mendez.

Having considered the evidence and the parties' arguments presented in their briefs and at the hearing, the Court denies the motion to suppress.

**II. Analysis**

**A. The Fourth Amendment and the Border Search Exception**

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects[ ] against unreasonable searches and seizures." U.S. Const. amend. IV. *See Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). The Court must suppress evidence gathered in violation of the Fourth Amendment's protection against unreasonable searches and seizures. *See Mapp v. Ohio*, 367 U.S. 643, 648–49 (1961). The Fourth Amendment generally requires that a warrant supported by probable cause be issued before any search, with a few exceptions. *Stanley v. Henson*, 337 F.3d 961, 963 (7th Cir. 2003).

One such exception is the border search exception. *United States v. Ramsey*, 431 U.S. 606, 621-22, 97 S. Ct. 1972, 1978, 52 L. Ed. 2d 617 (1977). "[S]earches made at the border, pursuant to the long-standing right of the sovereign to protect itself by stopping and examining persons and property crossing into this country, are reasonable simply by virtue of the fact that they occur at the border." *Id.* at 616. "The Court has linked this longstanding, congressionally-granted, search-and-seizure authority to two main purposes: to allow the regulation of the collection of duties, and

4

'to prevent the introduction of contraband into this country.'" *United States v. Wanjiku*, 919 F.3d 472, 480 (7th Cir. 2019) (citation omitted).[4]

### B. *United States v. Wanjiku*

The parties dispute the applicability of the Seventh Circuit's decision in *Wanjiku*. As here, that case involved a challenge to a warrantless border search of electronic devices at O'Hare. The district court found no Fourth Amendment violation because "the information available to the government at the time it initiated the searches of Mr. Wanjiku's electronic devices was sufficient to trigger a reasonable suspicion that he was involved" in criminal activity. *United States v. Wanjiku*, 2017 WL 1304087, at *5 (N.D. Ill. Apr. 6, 2017). On appeal, the Seventh Circuit affirmed. 919 F.3d at 474.

In June 2015, CPB and HSI were conducting a criminal investigation at O'Hare targeting certain individuals returning from three countries known for sex tourism and sex trafficking, including the sex trafficking of children. *Id*. Wanjiku met the investigators' initial screening factors, and after some additional research the investigators decided that Wanjiku should be sent for secondary inspection. After the CBP Officer's manual search of Wanjiku's cell phone, CBP turned the phone over to the HSI forensics team that used forensic software to "preview" Wanjiku's hard drive and cell phone. The searches revealed child pornography. *Id*. at 477-78.

On appeal, Wanjiku conceded that no court had applied a standard higher than reasonable suspicion for even highly intrusive searches at the border but argued that

---

[4] "O'Hare Airport is an international gateway into the United States, and incoming passengers from international ports are subject to border searches because the airport is the functional equivalent of an international border." *United States v. Yang*, 286 F.3d 940, 944 (7th Cir. 2002).

5

the Supreme Court's decisions in *Riley v. California,* 573 U.S. 373, 134 S. Ct. 2473, 189 L. Ed. 2d 430 (2014) and *Carpenter v. United States,* 138 S. Ct. 2206, 201 L. Ed. 2d 507 (2018) altered the legal landscape for cell phone searches. The Seventh Circuit acknowledged these cases but found "neither case addresse[d] searches at the border where the government's interests are at their zenith." *Id.* at 484. The Seventh Circuit observed that "[n]o court required probable cause and a warrant for a border search of any property," and no circuit court, before or after *Riley*, had "required more than reasonable suspicion for a border search of cell phones or electronically-stored data." *Id.* at 485.

Therefore, "[g]iven the state of the law at the time of these searches … the agents [] possessed an objectively good faith belief that their conduct did not violate the Fourth Amendment because they had reasonable suspicion to conduct the searches." *Id.* at 485-86. Summarizing the evidence the agents had gathered, the Court also found that "the agents possessed reasonable suspicion to search Wanjiku's electronic devices, including his cell phone, portable hard drive, and laptop computer. At the time that they conducted these searches, they reasonably relied on Supreme Court precedent that required no suspicion for non-destructive border searches of property, and nothing more than reasonable suspicion for highly intrusive border searches of persons." *Id.* at 488-89.

### C. The Mendez Search Did Not Violate the Fourth Amendment

Although *Wanjiku* did not decide "what level of suspicion is required (if any) for searches of electronic devices at the border," no circuit court including the Seventh

Circuit has "required more than reasonable suspicion for a border search of cell phones or electronically-stored data." *Wanjiku*, 919 F.3d at 485, 489.[5] In this case, there was no Fourth Amendment violation because the agents had reasonable suspicion to search Mendez's cell phone.

*a. Defendant's Argument that a Warrant was Required is Unfounded*

Relying on *Riley* and *Carpenter*, Defendant first argues that the officers should have obtained a warrant before the initial search of Mendez's cell phone. (Dkt. 50 at 5-10). The Seventh Circuit rejected the same argument in *Wanjiku*. The Seventh Circuit explained that in *Riley* and *Carpenter* the Supreme Court granted "heightened protection to cell phone data, [but] neither case addresse[d] searches at the border where the government's interests are at their zenith." 919 F.3d at 484. As the Supreme Court explained in *United States v. Montoya de Hernandez*, "not only is the expectation of privacy less at the border than in the interior, the Fourth Amendment balance between the interests of the Government and the privacy right of the individual is also struck much more favorably to the Government at the border." 473 U.S. 531, 539, 105 S. Ct. 3304, 3309, 87 L. Ed. 2d 381 (1985).

---

[5] In 2019, the Ninth Circuit held that "manual searches of cell phones at the border are reasonable without individualized suspicion, whereas the forensic examination of a cell phone requires a showing of reasonable suspicion." *Cano*, 934 F.3d at 1016, cert. denied, 2021 WL 2637990. This year, in a civil case, the First Circuit "join[ed] the Eleventh Circuit in holding that advanced searches of electronic devices at the border do not require a warrant or probable cause…[and] join[ed] the Ninth and Eleventh Circuits in holding that basic border searches of electronic devices are routine searches that may be performed without reasonable suspicion." *Alasaad v. Mayorkas*, 988 F.3d 8, 13 (1st Cir. 2021), cert. denied sub nom. *Merch. v. Mayorkas*, No. 20-1505, 2021 WL 2637881 (U.S. June 28, 2021).

7

While not disputing that one purpose of a border search is "to prevent the introduction of contraband into this country," *Montoya de Hernandez*, 473 U.S. at 537, Defendant argues that cell phone searches do not promote this interest. (Dkt. 50 at 10-11). Relying on *Riley*, Defendant contends "that not only are cell phone searches ineffective in preventing the entry of electronic contraband, they allow the government to arbitrarily invade the expectation of privacy in millions of pages of unrelated personal information in the process." (*Id.*). Defendant's reliance on *Riley* is misplaced. *Riley* stressed the uniqueness of cell phones and the nature of the data they store but *Riley* was about the "search incident to arrest" exception to the warrant requirement; it did not involve either the border search exception or contraband. Most significant for this case, the Seventh Circuit specifically stated in *Wanjiku*, which involved child pornography at the border, that *Riley* did not "address[] searches at the border where the government's interests are at their zenith." 919 F.3d at 484. The fact that even when the phone is searched and seized, the "illicit material may be stored on remote servers and continue to remain accessible inside the border" (Dkt. 50 at 10), does not decrease the government's interest at the border. To the contrary, the ready availability of this particular form of contraband increases the government's interest in detecting efforts to "import" it.

Moreover, Defendant does not dispute that child pornography is digital contraband. *See e.g. United States v. Cano*, 934 F.3d 1002, 1014 (9th Cir. 2019).[6]

---

[6] Defendant relies on *United States v. Aigbekaen*, 943 F.3d 713, 721 (4th Cir. 2019), cert. denied, 2021 WL 2637946 (U.S. June 28, 2021), but there the Court found no basis "in the record for agents to reasonably suspect that [defendant] possessed child pornography on his

8

Indeed Officer Callison testified that as a CBP officer he is responsible for preventing contraband from entering the country and once he saw what he believed was child pornography on Mendez's phone, he had an obligation to prevent it from entering the country. Defendant also does not address CBP's statutory authority to inspect baggage for contraband, a point raised by the Seventh Circuit in *Wanjiku* (919 F.3d at 480-81) and argued by the Government here (Dkt. 54 at 9).

### b. *Reasonable Suspicion Supported the Search*

Having determined that the border exception applies and at most the agents needed reasonable suspicion to search Mendez's cell phone, the question is whether reasonable suspicion existed for the initial manual search of Mendez's cell phone and scrolling through the photo roll.[7]

To assess whether officers have reasonable suspicion of criminal activity:

> we look at the totality of the circumstances of each case to see whether the detaining officer has a particularized and objective basis for suspecting legal wrongdoing. Reasonable suspicion requires more than an inchoate and unparticularized suspicion or hunch but considerably less than preponderance of the evidence. Ultimately, the determination of reasonable suspicion must be based on commonsense judgments and inferences about human behavior.

---

devices." *Id.* at 723. By contrast here, agents had reasonable suspicion that Mendez's cell phone contained evidence of child pornography.

[7] The remaining searches, (1) the search of additional files in the phone's iSafe application, (2) the forensic preview (DOMEX), and (3) the extraction of metadata from the files using an "ExifTool" were all conducted after Officer Callison discovered child pornography during his initial search of the cell phone. This gave the Government at least reasonable suspicion for these remaining searches. *See Wanjiku*, 919 F.3d at 485, n. 15 (forensic agent's search of the first device, hard drive, revealed child pornography so "[a]t that point, the agents possessed probable cause to search Wanjiku's cell phone.").

*United States v. Eymann*, 962 F.3d 273, 282 (7th Cir. 2020) (cleaned up). The standard "takes into account 'the totality of the circumstances—the whole picture.'" *Navarette v. California*, 572 U.S. 393, 397, 134 S. Ct. 1683, 1687, 188 L. Ed. 2d 680 (2014) (citation omitted). "Because it is a 'less demanding' standard, 'reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause.' The standard 'depends on the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'" *Kansas v. Glover*, 140 S. Ct. 1183, 1188, 206 L. Ed. 2d 412 (2020) (cleaned up). The Court "measure[s] whether reasonable suspicion existed at the moment of the search." *Wanjiku*, 919 F.3d at 487.[8]

At the evidentiary hearing, Officer Callison testified that on February 20, 2016, he received a "lookout" from CBP's intelligence group for Mendez. The lookout was for child pornography. Callison explained that a lookout provides information about the individual, their passport, and any arrest or other background information. Callison knew that the information leading to the lookout for Mendez was a prior arrest record related to child pornography or endangering a child, a 2011 conviction for endangering the life or health of a child, and "odd" previous travel. Based on the lookout, Callison searched the records and learned that in 2014 Mendez had been in a secondary inspection on return from Mexico and had reported that he had been kidnapped and all his electronics were taken and he was ordered to leave Mexico.

---

[8] Because the Court finds reasonable suspicion existed in this case it need not decide whether the good faith exception to the exclusionary rule applies.

Callison approached Mendez who acted in a very condescending way and tried to divert attention from the inspection. Callison asked for his cell phone and its password. Once Callison unlocked the phone, he began manually scrolling through the camera roll (only the camera roll) on the phone. He saw thousands of images of pornography generally and had no doubt that some of it was child pornography.

Thus at the time Callison searched Mendez's cell phone, the Government knew: (1) Mendez was an adult male traveling by himself; (2) Mendez had significant prior travel; (3) he was traveling from Ecuador, which Officer Callison understood to be a potential source country for child trafficking; (4) in 2014, Mendez underwent a secondary inspection, and the customs report from that inspection stated that Mendez had been kidnapped and all his electronics taken and he was told to leave Mexico; (5) Mendez had prior arrests for child pornography and soliciting a minor; (6) he had a 2011 conviction for endangering the life or health of a child; and (7) when Callison met Mendez, Mendez was very condescending and gave the impression that CBP should be letting him go, which Callison believed showed Mendez attempting to deflect attention away from his inspection.

Defendant argues that the only basis for searching his phone was his 2011 conviction. (Dkt. 50 at 13). That is not accurate. While there were some distinguishing facts in *Wanjiku* (agents had social media information about Wanjiku and found physical evidence in his bags and other items that called into question his story about the reason for his travel), the overall facts are strikingly similar. In *Wanjiku* and here, both individuals were adult males traveling by themselves from countries that

11

agents understood to be either a sex tourism destination or potential source country for child trafficking. Both men had prior criminal histories involving a minor victim. Both were flagged by the government before they landed at O'Hare as meeting certain criteria warranting a secondary inspection. Wanjiku was one of twenty-three or twenty-four individuals selected. Mendez was the target of a "lookout" from CBP's intelligence group for child pornography.

Additional facts here, not present in *Wanjiku*, support a finding of reasonable suspicion. Mendez had *two* prior arrests, both involving child pornography and solicitation, and a prior conviction for endangering the life/health of a child. Wanjiku had one prior arrest which involved a minor victim, but no prior conviction. Further, Mendez had a previous interaction with customs and at the time reported that all his electronics disappeared.

Considering the "whole picture" (*Navarette*, 572 U.S. at 397), the Court finds the agent had reasonable suspicion to scroll through Mendez's cell phone. Mendez's arguments do not account for the totality of the circumstances. He is correct that reasonable suspicion of criminal activity cannot be based *solely* on an individual's prior criminal record. *United States v. Walden*, 146 F.3d 487, 490–91 (7th Cir. 1998). But "a criminal record in conjunction with other information can form the basis of a reasonable suspicion." *Id*. At the evidentiary hearing, defense counsel asked Officer Callison whether it was fair to say that "pretty much any country could be a source of child pornography," and Callison responded yes. Again this is only one factor, and moreover, "the law simply does not require law enforcement officials, including

12

Customs inspectors, to be right every time." *Kaniff v. United States*, 351 F.3d 780, 790 (7th Cir. 2003).

### III. Conclusion

For the stated reasons, Mendez's motion to suppress [50] is denied.

E N T E R:

Dated: July 28, 2021

*Mary M Rowland*

MARY M. ROWLAND
United States District Judge